**OHIO REINSURANCE CORPORATION,
Plaintiff,**

v.

**BRITISH NATIONAL INSURANCE COMPANY LIMITED and British National Life Insurance Society Limited, Defendants.**

**No. 83 CIV. 2434 (CBM).**

United States District Court,
S.D. New York.

April 27, 1984.

Kroll, Pomerantz & Cameron by Sol Kroll, New York City, for plaintiff; John C. Lane, New York City, of counsel.

Breed, Abbott & Morgan by James D. Zirin, Alan J. Sorkowitz, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, Chief Judge.

 Plaintiff Ohio Reinsurance Corporation (Ohio Re) has sued defendants British National Insurance Company Limited and British National Life Insurance Society Limited seeking reformation of a contract for reinsurance (the contract) as well as a judgment declaring the rights of the parties under that contract. Federal jurisdiction in this suit is based on diversity of citizenship, 28 U.S.C. § 1332(a)(2). This case is properly in the Southern District of New York both because defendants are doing business in New York, 28 U.S.C. § 1391(c), and because an alien may be sued in any district, 28 U.S.C. § 1391(d).

In 1973, Ohio Re contracted with Bellefonte Insurance Company (Bellefonte) to reinsure just over nine percent of a portfolio of insurance underwritten for Bellefonte in the United Kingdom. The percentage of reinsurance for which Ohio Re is responsible under the contract declined with the passage of time, reaching one percent in January 1978. The contract is governed by English law. Ohio Re has brought this suit contending that Ohio Re had an understanding with Bellefonte which is not found in the contract. Specifically, Ohio Re contends that no more than five percent of the total insurance portfolio was to consist of casualty insurance. Because the portion of casualty insurance did exceed five percent, Ohio Re maintains that it had to spend more than anticipated on reimbursing claimants. Ohio Re seeks an accounting of and compensation for this alleged overpayment.

Defendants, the successors in interest to Bellefonte, have moved to stay the case pending arbitration. Defendants invoke Paragraph XVII of the contract which provides for arbitration "[i]n the event of any dispute at any time arising out of or in any way connected with or relating to the Agreement." *See* Affidavit of James D. Zirin, Exhibit A. This arbitration clause also states that "neither party shall have any right of action against the other," until an arbitral award has been made.

*Discussion*

 The Federal Arbitration Act, 9 U.S.C. § 3, provides that federal courts shall stay an action "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." Courts have read this language liberally. The Supreme Court has explained that "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Similarly, the Second Circuit has spoken of the basic proposition that "arbitration agreements are favored in the law and are to be broadly construed." *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78, 81 (2d Cir.1983).

The arbitration clause contained in the contract, noted above, is quite broad on its face. Given the liberality accorded arbitration clauses, it seems clear that this dispute falls within the ambit of the clause.

Ohio Re argues that the arbitration clause in this case does not apply because reformation would produce an agreement different in substance from the contract. The court finds this distinction inapposite in light of the broad construction given arbitration clauses. This particular arbitration clause applies to disputes "arising out of or in any way connected with or relating to this Agreement." As such, it appears that the parties intended the clause to cover this sort of dispute. *See Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk Gmbh*, 585 F.2d 39, 44 (3d Cir. 1978).

Ohio Re further argues that since the contract is to be governed by English law, the arbitrator would be without power to reform the contract.[1] The basis for this argument is an affidavit from English

---

1. "The circumstances that the arbitration is to take place in a foreign country does not affect the right to a stay under 9 U.S.C. § 3." *Mannes-* *mann Rohrleitungsbau v. S.S. Bernhard Howaldt*, 254 F.Supp. 278 (S.D.N.Y.1965).

counsel. The court need not involve itself in a discussion of English law. As indicated above, the Federal Arbitration Act governs the scope of arbitration in the federal courts. *See Southland Corporation v. Keating,* —— U.S. ——, 104 S.Ct. 852, 858–59, 79 L.Ed.2d 1 (1984). In this vein, the court notes decisions in which courts have recognized an arbitrator's power to reform a contract. *See American Home Assurance Co. v. American Fidelity & Casualty Co.,* 356 F.2d 690 (2d Cir.1966); *Aeronaves de Mexico, S.A. v. Triangle Aviation Services,* 389 F.Supp. 1388 (S.D. N.Y.1974), *aff'd,* 515 F.2d 504 (2d Cir.1975). In addition, "a limitation on the arbitrator's power is not a reason for bypassing arbitration where the claim is made upon the contract itself and is within the scope of the arbitration clause." *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857 (9th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). Therefore, the question of whether an English arbitrator could reform the contract is not relevant to this motion.

Precedent for Ohio Re's position arguably appears in a pair of Ninth Circuit decisions, *West Coast Telephone Company v. Local Union No. 77, International Brotherhood of Electrical Workers, AFL–CIO,* 431 F.2d 1219 (9th Cir.1970), and *City Electric, Inc. v. Local Union 77, International Brotherhood of Electrical Workers,* 517 F.2d 616, 619 (9th Cir.), *cert. denied,* 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975).[2] Neither case is on point. In *West Coast Telephone,* the arbitration clause at issue specifically excluded reformation of a collective bargaining agreement from its coverage. Of course, the clause in this case does not exclude reformation. In *City Electric,* an arbitrator in a union-management grievance proceeding suggested modifying the collective bargaining agreement before him to bring it into line with other agreements. Rather than evaluating the intent behind the agreement in question,

the arbitrator in *City Electric* attempted to affect that agreement prospectively. The court found his efforts to modify the agreement inconsistent with the interpretive purpose of the arbitration clause. As discussed above, the arbitration clause in this case does appear to anticipate disputes of the sort before the court.

In sum, the court finds that this dispute should go to arbitration in accordance with the terms of the contract. The court is mindful of the injustice which might result if an English arbitration panel finds itself powerless to consider the issue of reformation. In that event, this court would obviously consider whether reformation is justified. For the present, the court simply concludes that such consideration would be premature.

*Conclusion*

For the reasons discussed above, defendants' motion for a stay of this action, pending arbitration, is granted.

SO ORDERED.

---

**2.** The court notes that these cases involve arbitration over collective bargaining agreements which, as Ohio Re points out, differ in kind from commercial arbitration. *See United Steel-* *workers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960) (noting differences between labor arbitration and commercial arbitration).