812 So.2d 749 (2002)
Rose Marie Warren SANDERS
v.
Stephen C. SANDERS.
No. 2000 CA 2899.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
Rehearing Denied March 25, 2002.
Writ Denied June 14, 2002.
*751 William F. Bologna, New Orleans, Counsel for Defendant/Appellant Stephen C. Sanders.
James E. Moorman, III, Mandeville, Counsel for Plaintiff/Appellee Rose Marie Warren Sanders.
Before: WHIPPLE, FOGG, and GUIDRY, JJ.
GUIDRY, J.
A non-resident, ex-husband appeals a judgment of the trial court denying his exception of lack of personal jurisdiction in an action brought by his ex-wife to rescind a extra-judicial community property partition agreement. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In 1968, the parties to this appeal were married in Madison, Tennessee. Of their marriage, one child was born. In February 1988, the parties moved to Covington, Louisiana in St. Tammany Parish and maintained their matrimonial domicile there until the time of their legal separation. On September 10, 1990, Mr. Sanders filed a petition for separation, and a judgment granting the same was rendered on December 14, 1990. On that same date in New Orleans, Louisiana, the parties executed a voluntary community property partition agreement. In that document, both parties attested to being residents of St. Tammany Parish. In addition to partitioning the community property of the parties, the agreement provided that Mr. Sanders would pay Ms. Sanders the sum of $12,000 in alimony annually for a period of ten years after the rendition of a judgment of divorce.[1] Approximately four months later, a judgment of divorce was rendered by the Twenty-second Judicial District Court for the Parish of St. Tammany on the petition of Mr. Sanders.
On December 4, 1995, Ms. Sanders filed a petition in St. Tammany Parish to rescind the extrajudicial community property partition agreement based on allegations of fraud and lesion. Mr. Sanders, in response, filed exceptions of insufficiency of citation, service of process, prescription and lack of personal and subject-matter jurisdiction. A hearing on the exceptions was held on May 16, 2000, at the outset of which Mr. Sanders withdrew the exception of prescription. By a judgment rendered in open court and signed on May 24, 2000, the trial court denied all the remaining exceptions raised by Mr. Sanders. Mr. Sanders appeals the May 24, 2000 judgment, alleging that the trial court erred in not maintaining the exception pleading lack of personal jurisdiction.

DISCUSSION
The crux of Mr. Sanders' argument that the trial court lacks personal jurisdiction to entertain the suit brought by Ms. Sanders is that the trial court assumed jurisdiction based on the theory of "continuing jurisdiction" of matters incidental to the divorce proceedings. Mr. Sanders is correct in his argument that the subject partition agreement is not a matter that is or was "incidental" to the parties' divorce proceedings. The partition agreement at issue was voluntarily entered into by the parties and was neither supervised, approved or adopted by the trial court in the *752 course of the divorce proceedings. Therefore, clearly the partition agreement is not a matter that is incidental to the divorce proceedings over which the trial court formerly exercised jurisdiction. Cf. Gowins v. Gowins, 466 So.2d 32, 37 (La.1985). The fact that the extrajudicial partition agreement is not incidental to the parties' divorce proceedings does not mean, however, that a court of this state lacks jurisdiction to consider Ms. Sanders' suit seeking to void the agreement. To the contrary, applying the standard due process analysis, we must still determine whether Mr. Sanders' contacts with this state are sufficient for the assertion of personal jurisdiction in this matter.
In reviewing a ruling on an exception of lack of personal jurisdiction over a nonresident defendant by a Louisiana court, this court conducts a de novo review of the legal issue of personal jurisdiction. Pounds v. Florida Power & Light Co., 99-1091, p. 3 (La.App. 1st Cir.5/12/00), 762 So.2d 161, 163, writ denied, 00-1763 (La.9/22/00), 768 So.2d 604.
The requirement that a court have personal jurisdiction flows not from Article III of the U.S. Constitution, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). In Spomer v. Aggressor Intern., Inc., 00-1646, p. 4 (La.App. 1st Cir.9/28/01), 807 So.2d 267, 271, this court noted that
Under Louisiana's Long-Arm Statute, LSA-R.S. 13:3201(B), a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the Louisiana Constitution and the Constitution of the United States. Therefore, the limits of the Louisiana Long-Arm Statute and the limits of constitutional due process are coextensive, and the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements.
In order to subject a defendant who is not present within the territory of the forum to a judgment in personam, due process requires that he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.' International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). When a forum seeks to exercise specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful minimum contacts is satisfied when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries arising out of or related to those activities. Spomer, 00-1646 at 5, 807 So.2d at 271.
With respect to interstate contractual obligations, it has been held that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. Burger King Corporation v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). It is generally held that those nonresidents who enter into interstate contracts with a forum state's citizens subject themselves to the specific jurisdiction of that state in a suit arising from the contractual obligation. Salley v. Colonial Marine Industries, *753 Inc., 95-2215, p. 13 (La.App. 4th Cir.9/11/96), 680 So.2d 1242, 1249. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. McGee v. International Life Insurance Company, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).
In the case before us, the parties were married in Tennessee and lived there for many years before relocating to Louisiana in 1988. For two years, the parties established their matrimonial domicile in this state and by virtue of having failed to timely elect to participate in a different marital regime, became subject to the regime of acquets and gains. In 1990, Mr. Sanders filed for and received a judgment of legal separation and, that same year, he voluntarily entered into a community property partition agreement, in which he attested to being a resident of Louisiana. The following year, after changing his domicile to Tennessee, Mr. Sanders filed for and received a judgment of divorce, in Louisiana, from Ms. Sanders who remained a Louisiana domiciliary.
Although there is some question as to whether Mr. Sanders was actually residing in Louisiana or Tennessee at the time that he entered into the voluntary community property partition agreement with Ms. Sanders, there is no question that at the time Mr. Sanders signed the agreement, he knowingly entered into a contract with a Louisiana domiciliary and attested to being a Louisiana resident. The facts further show that it was Mr. Sanders, not Ms. Sanders, who left Louisiana to establish a domicile in another state. Additionally, based on the provisions of the partition agreement, we cannot say that it was not foreseeable that Mr. Sanders could be haled into court in this state in regard to an action brought pursuant to that agreement. By the express provisions of the agreement, Mr. Sanders obligated himself to pay Ms. Sanders alimony for a period of ten years following the judgment of divorce, which was rendered on April 30, 1991. And even in the absence of this provision, as the parties acknowledged at the hearing on the exception, either party had a right to file suit seeking to rescind the agreement within five years of its execution.
Nevertheless, Mr. Sanders argues that it is patently unfair to find that he is amenable to suit in this state when he had had no contact with Louisiana for over five years, at the time Ms. Sanders' suit was filed. Mr. Sanders ignores the alimony payments he remitted to Ms. Sanders, a Louisiana domiciliary.
In Thomas Organ Company v. Universal Music Company, 261 So.2d 323 (La. App. 1st Cir.1972), the non-resident plaintiff filed suit in Louisiana against a partnership which had always been located in the state. The partnership had ordered several items of musical supplies from the plaintiff company, but failed to remit payment. Prior to the plaintiff filing suit to collect the debt, both of the partners comprising the partnership left the state. In reversing the trial court's ruling maintaining the exception of lack of personal jurisdiction, this court held that "[t]o deny plaintiff service upon defendant partners just because they had left the state wherein they conducted all of the business which is the subject of this suit would be offensive to the concept of `fair play and substantial justice.'" Thomas Organ Company, 261 So.2d at 326.
In a more recent case, the Fifth Circuit similarly determined that a state court could assert jurisdiction over a non-resident defendant, who, while a domiciliary of the state, had entered into certain transactions which were the subject of the suit for which a court of this state was asserting *754 jurisdiction. In Cutitto v. Boyes, 97-63 (La.App. 5th Cir.5/28/97), 695 So.2d 1080, the plaintiff, an accountant, filed suit for the collection of his fee that he assessed for performing an audit of a company at the defendant's request. Although the defendant denied being a domiciliary of Louisiana at the time he requested that the plaintiff to perform the audit, the plaintiff testified that he understood the defendant to be a Louisiana resident at the time he contracted for his services. In any case, the court found that while the defendant was present in the state, he reached an agreement with the plaintiff to have him perform an audit of a company in which the defendant's wife held an interest. The court further found that the parties' subsequent contacts concerned those services and were also made while the defendant was in the state. In so acting, the court found that the defendant "purposefully directed his activities at Cutitto, a resident of the forum, and this litigation results from injuries that arise out of or relate to those activities. Boyes created continuing obligations between himself and Cutitto, a resident of the forum." Cutitto, 97-63 at 5, 695 So.2d at 1083. The court therefore found the assertion of in personam jurisdiction to be proper.
In yet another case, Higley v. Higley, 95-0965 (La.App. 4th Cir.6/29/95), 658 So.2d 42, writ denied, 95-2266 (La.11/27/95), 663 So.2d 732, the court found that the defendant did have the minimum contacts to support the assertion of personal jurisdiction. In Higley, the plaintiff, seeking to recover some sums of money loaned to her father, filed a writ of nonresident attachment to secure certain funds owed to her father by a Louisiana company. Neither the plaintiff nor the defendant were domiciliaries of Louisiana at the time the writ was filed. In finding that the defendant had the minimum contacts with the state, sufficient to support an assertion of jurisdiction, the court held that "[t]he defendant clearly expected to be able to enforce the contract in Louisiana in the event of default, thereby availing himself of the privilege of conducting activities within the state and invoking the benefits and protections of the state's laws." Higley, 95-0965 at 4-5, 658 So.2d at 45. The court, nevertheless, found that the assertion of jurisdiction would be improper in that case because the defendant's minimum contacts were outweighed by evidence of substantial unfairness and injustice of requiring the defendant to defend suit in this forum. Higley, 95-0965 at 5, 658 So.2d at 46.
Considering the facts and reasoning of the aforementioned cases, we see no reason to reverse the judgment of the trial court denying the exception of lack of personal jurisdiction. Without question, Louisiana has an interest in making certain that one of its citizens has not been fraudulently deprived of property owed to her. Furthermore, this suit stems directly from Mr. Sanders purposefully entering into a contract with a forum resident, regarding an issue for which he, nevertheless, may have been amenable to suit had the agreement been confected as a result of the divorce proceedings, rather than extrajudicially. See Gowins, 466 So.2d at 37. As a result of his conduct, Mr. Sanders purposefully availed himself of the privilege of conducting activities within this state, thus invoking the benefits and protections of its laws, and not as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of Ms. Sanders. Therefore, it is not presumptively unreasonable to expect him to submit to the burdens of litigation in this forum. de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 106 (La.1991).
As to Mr. Sanders' secondary argument regarding insufficiency of service of *755 process and citation, we find no merit. Although Ms. Sanders erroneously requested that an attorney be appointed to represent Mr. Sanders as an absentee, no such action was taken by the trial court. Ms. Sanders also requested nonresident service of process in accordance with La. R.S. 13:3204, which service was properly made according to evidence in the record. Therefore, we reject Mr. Sanders arguments alleging insufficient service of process and citation.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court finding Mr. Sanders amenable to the authority of the courts of this state in regards to the plaintiff's suit. All costs of this appeal are charged to the defendant, Stephen C. Sanders.
AFFIRMED.
WHIPPLE, J., concurs in the result.
NOTES
[1] The agreement also provided for the payment of alimony pending the divorce in the amount of $1,500 monthly, commencing with the execution of the agreement.